**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**NAZAR F. TALIB; NUWAVE LIMITED; OMAR S. BANGAITAH; AHMED SALEM A BUGSHAN; AHMAD M AL AJLAN; ALI AL SABAH;CASTLE BRIDGE INVESTORS LTD.; IBRAHIM AL THERBAN; INTERNATIONAL FINANCIAL ADVISORS K.S.C.C.; KHALID AL ATTAL; KUWAIT INVESTMENT COMPANY; KUWAIT REAL ESTATE COMPANY; Q INVEST INC.; MADHDI M HAIDER; MOHAMMAD H AL DALL; NEDAL AL MASSOUD; OSAMA A AL ABDULJALEEL; PEARL OF KUWAIT REAL ESTATE CO.; SALEH AL SALMI; TAIBA GROUP INC; THERFIELD HOLDINGS; WALEED A AL ESSA; YASSER ZAKARIA AL NAHHAS; YOUSEF AL SALEH,**

      **Plaintiffs,**

**v.**                                                     **Case No. 8:05-cv-282-T-17TBM**

**SKYWAY COMMUNICATIONS HOLDING CORP.; BRENT KOVAR; JAMES KENT; JOY C. KOVAR,**

      **Defendants.**
_____/

## **REPORT AND RECOMMENDATION**

THIS MATTER is before the court on referral by the Honorable Elizabeth A. Kovachevich for a Report and Recommendation on Plaintiffs' **Motion for Temporary Restraining Order Freezing Defendants' Assets and for Expedited Discovery** (Doc. 14).[1] By their motion, Plaintiffs seek the entry of a temporary restraining order freezing any and all assets of the Defendants, their affiliates (including SkyWay Aircraft, Inc., and SkyWay

---

[1] Plaintiffs filed a duplicate pleading with an attached proposed order. See (Doc. 16).

Global, L.L.C.), and all entities under their control. Additionally, Plaintiffs request leave to engage in expedited discovery. In support of their motion, Plaintiffs filed a memorandum and the Declaration of Nazar F. Talib with exhibits (Doc. 15). Defendants filed a response in opposition (Doc. 26) and the Affidavits of James Kent, Brent Kovar, James Frank Hansen (Docs. 30, 31, 32, 33). Plaintiffs also filed a reply memorandum (Doc. 27)[2] and the Declaration of Frank Delahanty (Doc. 29). A hearing on the motion was conducted on March 30, 2005.[3]

I.

Plaintiff Nazar F. Talib, a citizen of Jonesboro, Arkansas, is a securities broker registered with the National Association of Securities Dealers and the Securities Exchange Commission (hereinafter "SEC"). In his capacity as a licensed securities broker, Plaintiff Talib acted as an agent for the other Plaintiffs (hereinafter "Investor Plaintiffs"), Kuwaiti citizens and businesses, in connection with their purchase of securities from Defendant SkyWay Communications Holding Corp. (hereinafter "SkyWay").

---

[2]Also before the court is **Defendants' Motion to Strike the Plaintiffs' Unauthorized "Reply Memorandum in Support of Motion for Temporary Restraining Order Freezing Defendants' Assets"** (Doc. 36) and **Plaintiffs' Motion for Permission to File Reply Brief in Support of Motion for Temporary Restraining Order and for Expedited Discovery *Nunc Pro Tunc*** (Doc. 37). The court did not request the filing of a reply, and thus, this pleading was filed in contravention of Local Rule 3.01(b). However, because it responds to new legal arguments raised by Defendants and not addressed by Plaintiffs' motion, the court will consider the reply in its deliberations. Accordingly, Defendants' motion to strike (Doc. 36) is **DENIED**, and Plaintiffs' motion to file their reply brief is **GRANTED** *nunc pro tunc*.

[3]Plaintiffs previously filed a Motion for Emergency Entry of Order or Hearing on Plaintiffs' Motion for a Temporary Restraining Order and Request for Expedited Discovery (Doc. 23). The court conducted a status conference on March 17, 2005, and entered an endorsed Order granting in part the motion and advancing the hearing on the motion for a TRO from April 6, 2005, to March 30, 2005. See (Docs. 24, 25).

SkyWay is a business based in Clearwater, Florida. Defendant Brent Kovar (hereinafter "Defendant Kovar" or "Kovar") is the President and a Director of SkyWay. Defendant James Kent is the Chief Executive Officer and a Director of SkyWay. Defendant Joy C. Kovar (hereinafter "Defendant J. Kovar" or "J. Kovar") is the Vice President of Corporate Services for SkyWay, and she is the mother of Brent Kovar.

By the allegations in Plaintiffs' First Amended Verified Complaint (Doc. 13), in 2002 and 2003, Defendants Kovar and Kent attempted to conduct an initial public offering by registering SkyWay Aircraft, Inc. (hereinafter "SkyWay Aircraft"), a wholly-owned subsidiary of SkyWay, with the SEC. The SEC did not accept any of the registrations, and in May 2003, Defendants withdrew their registration requests. In June 2003, SkyWay and SkyWay Aircraft acquired i-Teleco.com, a public company that had formally been traded on the NASDAQ Over-the-Counter (hereinafter "OTC") Bulletin Board Exchange.

According to Plaintiffs, SkyWay then began to tout itself to the public -- through press releases and SEC filings -- as a company that would provide "Homeland Security" and other services to the airline industry through broadband wireless applications of their licensed broadband wireless communication technology. In particular, SkyWay conveyed to the public, through SEC filings and press releases, that it had created the technology to transmit Internet access and data and video on a wireless basis to commercial airline carriers and that it was developing a network for its services. Plaintiff maintains that SkyWay did not possess such technological capabilities. Plaintiff cites to a press release issued by SkyWay on September 2, 2003, in which it announced that it had signed a contract with Southeast Airlines, Inc., for a variety of in-flight services, including air-to-ground connection for high-speed Internet, telephone services, on demand video and audio entertainment, video

3

monitored security service, flight management, avionic data links for maintenance support, and archiving of aircraft monitor systems data. The press release did not disclose, however, that Southeast Airlines agreed to allow SkyWay to install such a system in its aircraft once SkyWay actually created such a system and that Southeast Airlines was not obligated to pay for the system and services.

Following this press release in September 2003, Plaintiff Talib, acting as an agent of the Investor Plaintiffs, contacted SkyWay and met with Defendants Kovar and Kent at SkyWay's headquarters in Clearwater, Florida, in November 2003. At that time, Defendants reiterated SkyWay's representations that SkyWay had the technological capability to provide wireless Internet, cellular phone, and video access to commercial airlines. They also represented that Plaintiffs' investment funds would be utilized to build SkyWay's network. By Plaintiffs' allegations, neither Kovar nor Kent revealed that SkyWay did not possess the technology currently to provide such services.

In January 2004, Plaintiff Talib contacted Defendant Kovar and inquired whether his clients could invest in SkyWay by purchasing freely tradable shares directly from SkyWay. In response, Defendant Kovar indicated that Investor Plaintiffs could purchase "Initial Public Offering" (hereinafter "IPO") shares, which would become freely tradable in the second quarter of 2004.

In early 2004, Investor Plaintiffs invested over $12,000,000 for allegedly freely tradable IPO shares in SkyWay, and their purchases were confirmed by letter from Defendant Kent. However, SkyWay never registered the Investor Plaintiffs' shares, and the Investor Plaintiffs did not receive freely tradable shares. In August 2004, upon Defendant Kent's representation that Plaintiffs NuWave and Bangaitah would receive freely tradable shares

4

upon an additional investment, Plaintiffs NuWave and Bangaitah invested an additional $1,400,000 and $175,000, respectively, in SkyWay. These purchases were also confirmed by letters from Defendant Kent. SkyWay never issued any stock certificates to Plaintiffs NuWave and Bangaitah for their additional investments. Plaintiffs NuWave's and Bangaitah's demands for return of their monies were ignored. In October 2004, Defendant Kent, on behalf of SkyWay, acknowledged that the company had provided them inaccurate information about its promise to issue them freely tradeable shares. Nevertheless, throughout November and December 2004, SkyWay continued to represent to Plaintiffs that it would provide freely tradable shares to the Investor Plaintiffs but failed to do so.

According to SEC records, individual Defendants began selling their shares in SkyWay in late 2004 and early 2005. Plaintiffs allege that at the same time, Defendants Kent and Kovar caused Skyway to issue positive but misleading or false press releases that inflated the value of SkyWay stocks. According to Plaintiffs, Defendants also engaged in self-dealing in February 2004 by its purchase of a technology patent from SkyWay Global, LLC, a company owned and controlled by Defendants Kovar and J. Kovar, for $1 million and a 3% royalty agreement. Additionally, Plaintiffs allege that Defendants committed corporate waste during 2004 by its purchase of six Hummer vehicles for approximately $300,000; by hiring family members, David Huy and Joy Kovar, and paying them each a $150,000 annual salary; and by purchasing a sky box in Tampa Bay stadium for approximately $100,000 per year.

As of the filing of Plaintiffs' amended complaint, SkyWay's OTC market price was $.07 per share.

On December 14, 2004, Plaintiffs initiated this action in the United States District Court for the Eastern District of Arkansas. See (Doc. 2). The case was transferred to this

court in February 2005.  Plaintiffs filed an Amended Complaint (Doc. 13) on March 8, 2005.  By their Amended Complaint, Plaintiffs allege violations of Sections 12(a)(1) and 12(a)(2) of the Securities Act of 1933 (hereinafter "Securities Act"), 15 U.S.C. § 77l by SkyWay, Kovar, and Kent (Counts I and II); violations of Florida Securities Protection Act (hereinafter "FSPA"), Fla. Stat. ch. 517.211(1), (2) by SkyWay, Kovar, and Kent (Count III);[4] seek temporary and permanent injunctive relief to effectuate the right of rescission arising from the violations set forth in Counts I, II, and III (Count IV); fraudulent inducement by SkyWay, Kovar, and Kent (Count V); negligent, reckless, and intentional misrepresentation by SkyWay, Kovar, and Kent (Count VI); and breach of contract by SkyWay (Count VII); Plaintiffs also assert a shareholder derivative claim alleging breach of fiduciary duties by the individual Defendants (Section V, Count I).

As for relief, Plaintiffs seek rescission and return of the investments (not less than $12 million) plus interest, exemplary and punitive damages ($90 million), fees and costs, and temporary and permanent injunctive relief enjoining the Defendants from transferring or encumbering the funds in question held by the Defendants, their affiliates, or agents.

By the instant motion, Plaintiffs seek the entry of a temporary restraining order freezing any and all assets of the named Defendants and their affiliates, including SkyWay Aircraft, Inc., and SkyWay Global, L.L.C., and all entities under their control.  As grounds, Plaintiffs allege that in the last three months, the individual Defendants have sold their personal SkyWay shares at a frantic pace, and a restraining order is necessary to prevent further liquidation of Defendants' assets and to preserve the Plaintiffs' equitable remedy of

---

[4]By their heading, Counts I, II, and III purport to sue "all Defendants."  The allegations suggest otherwise.

6

rescission. Plaintiffs further argue that they have satisfied all of the requirements for temporary injunctive relief under Rule 65 of the Federal Rules of Civil Procedure. See (Doc. 15).

In response, Defendants dispute the emergency nature of Plaintiffs' request and argue that Rule 64 of the Federal Rules of Civil Procedure, which concerns the seizure of property, and Florida Statutes sections 76.05 and 76.10, Florida's law on prejudgment attachment, govern Plaintiffs' request to freeze Defendants' assets, not Rule 65. Defendants argue that the Eleventh Circuit has expressly rejected similar attempts to obtain prejudgment restraining orders freezing assets and that Plaintiffs have otherwise failed to satisfy Florida's requirements for prejudgment attachment under Florida law. See (Doc. 26).

By their reply, Plaintiffs argue that a temporary injunction freezing Defendants' assets is authorized by the court's general equitable powers and is appropriate here, where the Plaintiffs seek the equitable remedy of rescission under section 12(a)(2) of the Securities Act. See (Doc. 27).

II.

As a threshold matter, the court addresses Defendants' contention that Rule 64, rather than Rule 65, governs Plaintiffs' request for an Order freezing Defendants' assets. Defendants rely on Rosen v. Cascade Int'l, Inc., 21 F.3d 1520, 1529 (11th Cir. 1994), and Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc., 14 F.3d 1507 (11th Cir. 1994), in which the Eleventh Circuit held that the district court lacks general equitable authority to freeze a defendant's assets pending trial in order to establish a fund with which to satisfy a potential judgment for monetary damages -- and not equitable relief -- for fraud under federal securities

laws and state common law.  In Rosen, the court followed Mitsubishi and DeBeers Consol. Mines, Ltd. v. United States, 325 U.S. 212 (1945), in determining that Rule 64 provides the standard for evaluating a request for preliminary injunctive relief that is actually a request for prejudgment attachment in cases where only monetary damages are sought.  Moreover, because Rule 64 requires the application of state law, a plaintiff's request for prejudgment attachment should be denied where state statutory requirements have not be satisfied.  See Fed. R. Civ. P. 64; see also Rosen, 21 F.3d at 1531; Mitsubishi, 14 F.3d at 1522.  The court in Rosen cautions that when the court is "faced with motions appearing to call for an attachment but labeled something else, [it must] look past the terminology to the actual nature of the relief requested."  Rosen, 21 F.3d at 1520.  In a more recent Supreme Court case, Grupo Mexicano de Desarrolo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999), the Court approved its earlier decision in De Beers and held that a district court lacks the authority to issue a preliminary injunction preventing defendants from disposing of their assets pending adjudication of the plaintiff's claim for money damages.  See Grupo Mexicano, 527 U.S. at 333.

By its reply, Plaintiffs argue that Rosen and Mitsubishi are distinguishable from the instant case because the plaintiffs in those cases brought only claims for money damages.  Indeed, the Eleventh Circuit has noted the difference between cases such a Rosen and Mitsubishi from cases in which plaintiffs seek a permanent injunction and other equitable relief.  See Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 987 (11th Cir. 1995).  In Levi Strauss, the Eleventh Circuit found that "[a] request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, to assure the availability of permanent relief."  Id. (citing Fed. Trade Comm'n v.

United States Oil & Gas Corp., 748 F.2d 1431, 1433-34 (11th Cir. 1984); Reebok Int'l, Ltd. v. Marnatech Enterps., 970 F.2d 552, 558-62 (9th Cir. 1992)).

In support of the TRO, Plaintiffs argue that Plaintiffs here seek the remedy of rescission under section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l.[5]  It is well settled that an action for the return of a purchaser's purchase price for a violation of section 12(a) is an equitable remedy.  Deckert v. Independence Shares Corp., 311 U.S. 282 (1940).  In Deckert, plaintiffs sought the equitable remedies of rescission and restitution of consideration paid. After deciding that the Securities Act permitted equitable relief, the Court in Deckert determined that a preliminary injunction was a "reasonable measure to preserve the status quo" pending final adjudication of the issues raised by the complaint, including the prayer for equitable relief.  See id. 287-88.

Contrary to Defendants' argument that Grupo Mexicano supercedes Deckert, the court agrees with the Plaintiffs that Deckert and Levi Strauss are controlling in this instance, where the Plaintiffs raise claims for final equitable relief and thus may seek to preserve that relief by invoking this court's equitable power to issue temporary injunctive relief.  Accordingly, the court finds that Rule 65 governs Plaintiffs' request for a temporary restraining order freezing the assets of Defendants.

---

[5]Plaintiffs' Amended Complaint also seeks rescission under section 12(a)(1) of the Securities Act and the FSIP, Florida Statutes ch. 517.211(3).  The Eleventh Circuit has also recognized that Florida courts have made apparent the equitable nature of an action for rescission under Florida Statutes section 517.211.  Scheurenbrand v. Wood Gundy Corp., 8 F.3d 1547, 1551 (11th Cir. 1993) (citing E.F. Hutton & Co. v. Rousseff, 537 So. 2d 978, 981 (Fla. 1989); Davis v. McGahee, 257 So. 2d 62, 63-64 (Fla. Dist. Ct. App.1972)).

### III.

#### A.

Rule 65 of the Federal Rules of Civil Procedure governs the entry of a temporary restraining order (hereinafter "TRO") and a preliminary injunction. The purpose of a TRO is to protect the movant from irreparable injury and preserve the status quo until the district court can enter a decision on a preliminary injunction application, while a preliminary injunction maintains the status quo until the court can enter a final decision on the merits of the case. United States v. DBB, Inc., 180 F.3d 1277 (11th Cir. 1999); see also Canal Auth. of Fla. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974). A party seeking temporary injunctive relief must establish (1) a substantial likelihood of success on the merits; (2) irreparable injury if the injunction is not granted; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir. 2004); Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205 (11th Cir. 2003); "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citing All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)). A plaintiff may support its motion for a TRO

and preliminary injunction by setting forth allegations of specific facts in affidavits.[6]  See M.D. Fla. R. 4.05(b)(2), 4.06(b)(3).

B.

Section 12(a)(2) of the Securities Act creates a private cause of action against persons who offer or sell a security that includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements not misleading in light of the circumstances under which they were made.  15 U.S.C. § 77l(a)(2).  Section 12 liability extends to those who transfer title to the security and to those who successfully solicit the purchase.  Ehlert v. Singer, 245 F.3d 1313, 1315-16 (11th Cir. 2001) (internal quotation marks and citations omitted).  Thus, in order to state a claim under section 12(a), Plaintiffs must allege only that there was a material misrepresentation or omission.  Id. at 1316.  A misrepresentation or omission is material if "a reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action."  SEC v. Carriba Air, Inc., 681 F.2d 1318, 1323 (11th Cir. 1982).  This section does not require a showing of intent to defraud on the part of the defendant or even knowledge of the misrepresentation or omission.  Hermand & MacLean v. Huddleston, 459 U.S. 375, 381 (1983).

In support of their section 12(a)(2) claim, Plaintiffs first argue that Defendants misrepresented to Plaintiffs NuWave and Bangaitah that they would receive freely tradeable IPO shares of SkyWay stock for their additional investment in August 2004.  In support, they submit the letters sent by Defendant Kent to Plaintiffs NuWave and Bangaitah dated

---

[6]In considering a motion for preliminary injunctive relief, a district court may rely on affidavits and hearsay materials that would not be admissible as evidence for entry of a permanent injunction.  Levi Strauss, 51 F.3d at 985.

11

August 12, 2004, confirming their second purchases of SkyWay shares. See Decl. of Nazar F. Talib (Doc. 15, Ex. B, Exs. 3, 4). According to Plaintiffs, these letters evidence the misrepresentation by Defendants that the shares were "tradable" or "free trading." Correspondence by Mr. Talib to Mr. Kent demanding the return of the funds to NuWave and Bangaitah, Mr. Talib's declaration, and Mr. Kent's letter of October 27, 2004, indicate that these two Investor Plaintiffs never received any shares at all for their August 2004 investments. See id. at ¶¶ 9-13, Exs. 5, 6). With respect to these misrepresentations by Mr. Kent as an agent of SkyWay, the Plaintiffs have established a likelihood of success on the merits of their section 12(a)(2) claim.

As to the initial investments by all the Investor Plaintiffs earlier in 2004, Plaintiffs contend that Defendants Kovar and Kent misrepresented to Plaintiff Talib that the Investor Plaintiffs would receive freely tradable shares. More specifically, Plaintiff Talib states that Mr. Kovar indicated that the Investor Plaintiffs could purchase "Initial Public Offering" shares from SkyWay, which would become "freely tradable" in the second quarter of 2004, after the filing of appropriate registration materials with the SEC. See id. at ¶¶ 6-8). As evidence of this misrepresentation, Plaintiffs submit a letter from Defendant Kent to Plaintiff Talib dated January 8, 2004, which verified that "the purchase of SkyWay Communications Holding Corporation IPO stock will not be restricted in any way and upon the approval of the Security and Exchange Commission (SEC), which is anticipated to be accomplished during 2nd quarter 2004, will be converted into tradable shares." (Doc. 15, Ex. B, Ex. 2). Defendants contend that this letter contains no material misstatements because it indicates that the tradability of the shares was contingent upon the SEC's approval of SkyWay's

filings. At this stage of the proceedings, it clearly appears that the investor Plaintiffs were promised unrestricted stock for which they eventually invested some $12 million. Even if the latter portion of the letter is subject to different interpretations, Kent's statement that the IPO stocks would not be restricted in any way is sufficient to establish, for purposes of this motion, that the Plaintiffs are likely to prevail on this aspect of their section 12(a)(2) claim as well, as the stocks issued were restricted and have never been tradable.

With respect to the second element, Plaintiffs argue that they will be irreparably harmed by the loss of their right to restitution on their investment if Defendants are not prevented from liquidating the company's and their individual assets. Plaintiffs maintain that the individual Defendants have engaged in a recent "pump and dump" of SkyWay stock by which they sought to inflate the value of SkyWay stock so as to permit them to liquidate their shares at a favorable price.[7] In support of this contention, Plaintiffs submit SEC Forms 4 that reflect sales of millions of shares SkyWay stock by the individual Defendants in late 2004 and early 2005. See (Doc. 15, Ex. B, Ex. 8). Defendants do not dispute that they sold individually owned shares, but they assert that this conduct was lawful and does not evidence any wrongdoing. Additionally, Plaintiffs argue that SkyWay continues to lose money, in part because of improvident management and self-dealing. As set forth in their

---

[7] Mr. Talib alleges that Defendants engaged in conduct intended to enhance the value of Skyway stock so that the individual Defendants might realize significant profits. He claims that Skyway issued certain false or misleading press releases during November and December 2004 suggesting it had negotiated substantial cash infusions of $24 million and $7 million and boasting that an independent study had valued its equity at $500 million. By his argument, this was done in order to enhance the value of its stock prior to the individual Defendants' sell-off of Skyway shares. See Decl. of Nazar F. Talib (Doc. 15, Ex. B at ¶¶ 15-16, Ex. 9). Defendants dispute that the press releases were false or misleading or that they were made for the purpose of enhancing the value of the stock in anticipation of a sell-off.

13

First Amended Verified Complaint, Plaintiffs accuse the individual Defendants of engaging in a course of self-dealing and corporate waste to enrich themselves and members of their families.[8] While Defendants dispute that the activity so alleged was inappropriate for a developing company such as itself, they do not deny the expenditures alleged.[9]

On this motion, the court does not determine whether Defendants improperly inflated SkyWay stock shares while simultaneously "dumping" their shares into the market, as alleged by Plaintiffs. The court also makes no determination as to whether certain business decisions and acquisitions constituted corporate waste. It is enough to find the proffered evidence indicates a degree of self-dealing very inimical to the interests of these investors, which if left unabated would defeat their right to restitution even if they prevail on the claims for rescission. This harm is adequate under Deckert and Levi Strauss to justify the

---

[8] Specifically, Plaintiffs allege that in February 2004, SkyWay purchased a technology patent from SkyWay Global, LLC, a company owned and controlled by Defendants Kovar and J. Kovar, for an inflated price of $1 million and a 3% royalty agreement. Later in 2004, Defendants Kovar and Kent purchased six Hummer vehicles for approximately $300,000 and a sky box in Tampa Bay Stadium for approximately $100,000 per year, purported for marketing and advertising of SkyWay. Additionally, Plaintiffs allege that Defendant Kovar hired family members, David Huy and Joy Kovar, for positions in the company for which they were not qualified and paid them each a $150,000 salary. See (Doc. 13 at ¶¶ 53-60).

[9] One interesting footnote to these allegations of improvident expenditures is that Mr. Talib himself drives one of the Hummers purchased by SkyWay to promote its business. Many of these assets, such as the Hummers, the airplane, and the patent, remain with SkyWay.

issuance of a TRO.[10]  To this extent, Plaintiffs have demonstrated irreparable harm to warrant temporary injunctive relief.

The balancing of the harms element also favors the Plaintiffs in this instance. Defendants argue that any action by the court would result in adverse publicity detrimental to a developing company such as itself and that a blanket asset freeze such as that proposed by Plaintiffs in their pleadings would not only prevent the individual Defendants from normal daily life activities but would completely shut down and bankrupt the corporate Defendant.  At the hearing, Plaintiffs agreed that the assets freeze could be narrowed and modified to allow for the individual Defendants' living expenses and the corporate Defendant's operating expenses.  It is enough to here conclude that an injunction could be crafted that would permit the company to continue its operations yet order a freeze on the further liquidation of its assets by any of the Defendants for a limited period of time pending expedited discovery and further consideration of the issues on a motion for preliminary injunction.  In this event, the harm to Defendants would be minimized.

Finally, the court finds that the issuance of a temporary restraining order in this case would not disserve the public interest.  Simply stated, it is in the public interest, as intended

---

[10]On the matter of irreparable harm, Plaintiffs submit the testimony of Frank Delahanty concerning the alleged statements of Frank Hansen, SkyWay's Vice President of Operations, about misappropriation of investor funds. See (Doc. 29).  However, Mr. Delahanty's hearsay statements are refuted by the Affidavit of James Frank Hansen (Doc. 32) and Supplemental Affidavit of James S. Kent (Doc. 33).  The court does not attempt to resolve this conflict on this motion.

Defendants also submit the statements of Defendants Kent and Kovar that SkyWay is not removing any property out of the State of Florida or secreting or disposing of any property to avoid payment of debts or obligations of SkyWay. See (Docs. 30, 31).  Beyond the stock sales discussed above, this statement appears correct.  However, while these statements may arguably defeat prejudgment attachment under Florida law, they do not necessarily defeat Plaintiffs' request for a TRO to preserve the status quo under Rule 65.

15

by the Securities Act, to protect the public from misrepresentations and omissions in connection with the sale of securities.  See J.I Case Co. v. Borak, 377 U.S. 426, 432 (1964), abrogated on other grounds, Touche Ross & Co. v. Redington, 442 U.S. 560, 578 (1979); Gulf & Western Indust. Inc. v. Great Atlantic & Pacific Tea Co., 476 F.2d 687, 698-99 (2d Cir 1973); SEC v. Asset Recovery & Management Trust, 340 F. Supp. 2d 1305, 1311 (M.D. Ala. 2004).  Thus, Plaintiffs have satisfied this final element for temporary injunctive relief.

Accordingly, because Plaintiffs have satisfied their burden for obtaining a TRO, it is recommended that the court grant in part Plaintiffs' motion for a temporary restraining order.

C.

As to the scope of the temporary restraining order, the court finds that Plaintiffs have failed to demonstrate on this record that a blanket asset freeze of all assets held by the Defendants and related entities is warranted.  Based on the proof presently before the court, it is recommended that SkyWay, its officers, directors, agents, or assigns, should each be enjoined from selling, offering to sell, transferring, pledging, encumbering, or otherwise disposing of shares of its securities or any other company assets, tangible or intangible, except as may be necessary to fund its routine business affairs through its customary operating account(s).  Brent Kovar, James Kent, and Joy Kovar should likewise be enjoined from selling, offering to sell, transferring, pledging, encumbering, or otherwise disposing of any shares of SkyWay securities or other assets of SkyWay.  Based on the limited findings made herein, the court does not recommend enjoining, on this motion, the individual assets of the these individual Defendants or any affiliated company.

D.

Rule 65(c) requires the applicant to pay a bond in an amount as the court deems proper for the payment of costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. See Fed. R. Civ. P. 65(c). Here, the Plaintiffs urge that the amount of bond set upon consideration to their $12 million investment and suggest that $20,000.00 would constitute an appropriate bond. Given the limited scope of the temporary restraining order, the court finds this amount appropriate.

IV.

For the foregoing reasons, it is RECOMMENDED that the court GRANT in part Plaintiffs' Motion for Temporary Restraining Order Freezing Defendants' Assets and for Expedited Discovery (Doc. 14) as set forth above[11] and direct Plaintiffs to post a $20,000 bond as security for the TRO.

                Respectfully submitted on this
                5th day of April 2005.

_____
THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

---

[11] Plaintiffs also seek leave to conduct expedited discovery. Although Defendants opposed expedited discovery in anticipation of the hearing on the instant motion, they acknowledge that expedited discovery by the parties prior to a hearing on a motion for preliminary injunction is appropriate. Accordingly, to the extent that Plaintiffs (or Defendants) seek to conduct discovery limited to matters relevant to a claim for preliminary injunction, the motion is hereby GRANTED.

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; see also Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.


Copies to:
The Honorable Elizabeth A. Kovachevich, United States District Judge
Counsel of Record