**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

NAZAR F. TALIB, et al.,

    Plaintiffs,

v.                                    Case No.  8:05-cv-282-T-17TBM

SKYWAY COMMUNICATIONS
HOLDING CORP.; BRENT KOVAR;
JAMES KENT; JOY C. KOVAR,

    Defendants.
_____/

## O R D E R

THIS MATTER is before the court on the following motions:

(1) **Plaintiffs' Motion for Contempt and Other Sanctions Against SkyWay Communications Holding Corp. and Their Agents Acting in Active Concert With Them for Willful Violation of Order of April 27, 2005** (Doc. (61);

(2) **Plaintiffs' Second Motion for Contempt and for Sanctions Against SkyWay Communications Holding Corp. for Additional Violations of the Court's Preliminary Injunction Order of April 27, 2005** (Doc. 75);

(3) **Plaintiffs' Motion for Contempt and Other Sanctions Against Joy C. Kovar for Failure to Attend Her Deposition** (Doc. 78);

(4) **Plaintiffs' Motion for Contempt and Other Sanctions Against Glenn Kovar for Failure to Attend His Deposition** (Doc. 79);

(5) **Plaintiffs' Fourth Motion for Contempt and for Sanctions Against Brent Kovar, James Kent and Joy Kovar for Violations of the Order on Motion to Withdraw of June 8, 2005** (Doc. 87);

(6) **Plaintiffs' Fifth Motion for Contempt and for Sanctions Against Brent Kovar, James Kent and Joy Kovar for Additional Violations of the Preliminary Injunction Order of April 27, 2005** (Doc. 88); and

(7) Individual Defendants' **Reply to Plaintiffs' Motions for Contempt, Orders to Show Cause, Alternative Motion for Protective Order, and Supporting Memorandum of Law** (Doc. 96).

A show cause hearing was conducted on July 27, 2005. Brent Kovar, Joy Kovar, James Kent, and non-party Glenn Kovar appeared with counsel.[1] Plaintiffs proffered certain evidence and exhibits in support of their claims that SkyWay, the Individual Defendants, and Glenn Kovar have violated the Preliminary Injunction by disposing of SkyWay assets and have violated other orders of the court. Brent Kovar, Joy Kovar, and Tim Bodine testified on behalf of the Defendants, and certain exhibits were admitted.

A finding of civil contempt -- willful disregard of the authority of the court -- must be supported by clear and convincing evidence. Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1296 (11th Cir. 2002) (citing McGregor v. Chierico, 206 F.3d 1378, 1383 (11th Cir. 2000)). The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order. Id. In order to succeed on the inability

---

[1] The hearing was noticed on the initial motion for contempt and the second, fourth, and fifth motions and for Brent Kovar's and James Kent's failure to appear for a hearing on July 7, 2005. The court also addressed Joy Kovar's and Glenn Kovar's depositions. Later-filed motions concerning those depositions will be addressed separate order. On June 14, 2005, SkyWay commenced Chapter 11 bankruptcy reorganization, resulting in an automatic stay of this litigation as to the corporate Defendant. As used herein, "Defendants" refers to Brent Kovar, James Kent, and Joy Kovar.

defense, the alleged contemnor must go beyond a mere assertion of inability and establish that he has made in good faith all reasonable efforts to meet the terms of the court order in question. In re Lawrence, 279 F.3d 1294, 1297 (11th Cir. 2002). Upon a finding of contempt, the district court has broad discretion to fashion an appropriate remedy. Abbott Labs. v. Unlimited Beverages, Inc., 218 F.3d 1238, 1242 (11th Cir. 2000); Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1519 (11th Cir. 1990).

Rule 37 of the Federal Rules of Civil Procedure authorizes the court to impose sanctions against a party or officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) on behalf of a party who fails to comply with a discovery order of the court. Subsection (b)(2) provides a range of sanctions available: (1) the court may order that disputed facts related to the violated order be considered established in accordance with the claim of the party obtaining the sanctions order; (2) the court may refuse to permit the violating party to raise certain defenses, or it may prohibit that party from opposing certain claims or defenses of the party obtaining the sanctions order; (3) the court may strike any pleadings or any parts of the pleadings of the violating party, stay the proceedings, or even dismiss the action or enter a judgment of default against the violating party; and (4) the court may consider the violation a contempt of court. See Fed. R. Civ. P. 37(b)(2).

The rule further provides that "[i]n lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or *the attorney advising that party* or both to pay the reasonable expenses, including attorney's fees, caused by the failure,

unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Id. (emphasis added). Rule 37 sanctions, including dismissal or issuance of a default judgment, enable district courts to police discovery simply and speedily, see In re Southeast Banking Corp., 204 F.3d 1322, 1335 (11th Cir. 2000), and are intended to prevent unfair prejudice to the litigants and insure the integrity of the discovery process. Gratton v. Great Am. Communications, 178 F.3d 1373, 1374 -75 (11th Cir. 1999) (citing Aztec Steel Co. v. Florida Steel Corp., 691 F.2d 480, 482 (11th Cir. 1982)). The district court has broad discretion to control discovery, including the choice whether or not to impose Rule 37 sanctions. See Phipps v. Blakeney, 8 F.3d 788, 790 (11th Cir. 1993).

By Plaintiffs' first motion for contempt against Defendant SkyWay and its agents (Doc. 61), Plaintiffs seek an order holding SkyWay and the Individual Defendants or others in contempt for willfully violating the court's Order and Preliminary Injunction (Doc. 50) of April 27, 2005, by selling a Cessna aircraft and by offering for sale a McDonnell Douglas DC-9 aircraft and for violating the court's Order granting Plaintiff's Emergency Motion For Compliance With Preliminary Injunction (Doc. 56). In support, Plaintiffs cite to an April 28, 2005, press release issued by SkyWay; a May 2, 2005, advertisement on www.globalair.com; and a printout from an on-line FAA Registry inquiry on May 13, 2005, suggesting a transfer of ownership of the Cessna. In response, Defendants assert that they were not responsible for the issuance of the press release since they resigned as officers and directors prior to the

issuance of the Orders[2] and in any event, they claim no property has been sold or transferred and the offending portions of the press release were retracted pursuant to this court's Order.[3]

At present, there is insufficient evidence to support a finding of contempt as against the Defendants for the sale or transfer of these planes or for the advertisement, and the motion for contempt (Doc. 61) is denied.

By their second motion for contempt (Doc. 75), Plaintiffs allege further violations of the injunction and two subsequent court orders by the Defendants' removal of property from SkyWay's former offices, destruction of evidence, and disposition of company assets. As grounds, Plaintiffs advise that an inspection of SkyWay's former office was conducted on May 27, 2005. Dr. Larry R. Leibrock, Ph.D., an expert in digital forensics, information systems management, and electronic security and privacy, and John Jebens, a former

---

[2]The evidence, at present, reveals that the Defendants resigned as officers and directors of SkyWay on or about April 24, 2005, or April 25, 2005, ostensibly pursuant to a plan to merge with Corban Networks. According to Brent Kovar and Joy Kovar, the Defendants thereafter took no part in the affairs of SkyWay. According to Brent Kovar, Ray Powers was made a new director, and he was the person responsible for placing the advertisement and, subsequently, its retraction. According to Kovar, Powers resigned as director upon learning of the Preliminary Injunction, and as discussed below, Kovar claims SkyWay remained without officers or directors until June 8, 2005.

[3]Brent Kovar testified that the Cessna was purchased by SkyWay in early 2004 from Royal Sons. Because they were going to sell it soon thereafter, registration was left in Royal Sons for convenience, and while it may appear to be owned by Royal Sons, it is owned by SkyWay. Per Kovar, the DC-9s were also purchased in 2004. One plane was purchased by SkyWay from DuPont Fund for stock. The other was purchased by SkyWay for $500,000 and a secured loan of $1.5 million through United Bank. Several persons signed on the note, and one Fred Geffon, the principal of Royal Sons, is said to have paid off the note. According to Kovar, the planes remain the property of SkyWay, and all three are presently parked at the Clearwater/St. Petersburg Airport. Also according to Kovar, the fleet of Hummers is still owned by SkyWay and all vehicles are accounted for. The court accepts this sworn testimony as true for present purposes.

employee of SkyWay, were present.  They concluded that equipment, including servers, plasma displays, video projectors, oscilloscopes and domain frequency analyzers, tape backup or recording units, Dell notebook computers, electrical generators, and other computer devices and equipment were missing from the premises.  See Aff. of Larry R. Leibrock, Ph.D. (Doc. 75-5); Aff. of John Jebens (Doc. 101-2).  Mr. Jebbens also attested that SkyWay's offices were fully operational on April 27, 2005, but two days later, he witnessed people entering the facility, packing boxes, and removing personal items and SkyWay property.  According to Jebens, he retained possession of a plasma screen and flat screen monitor purchased and owned by SkyWay, and he testified that other former SkyWay employees were given SkyWay's laptop computers in lieu of back wages.  No one has ever sought the return of these items.

Defendants filed responses in opposition (Docs. 65, 96) and proffered Brent Kovar's testimony, Joy Kovar's testimony, and a Powerpoint presentation, see (Doc. 100), to refute Plaintiffs' claims.  Again, they urge that they resigned as officers and directors of SkyWay on or about April 24, 2005, prior to the issuance of the Preliminary Injunction and were not responsible for what occurred at the premises thereafter.  They urge that after issuance of the court's injunction, the new director of SkyWay, Ray Powers, also resigned, and Corban Networks abandoned the proposed merger.  On or about April 29, 2005, ECI Telecom, Inc., the landlord of the property, "evicted" SkyWay, took possession of SkyWay's offices and all property remaining on the premises, and changed the locks.  The Defendants testified that they only reentered the premises pursuant to an Order entered by the Bankruptcy Court on July 13, 2005, which allowed all interested parties access to the former SkyWay offices on

July 22, 2005. That inspection revealed that ECI had consolidated and relocated SkyWay's property to a storage area within the building. Brent Kovar testified that some employees were allowed to keep laptops as payment for wages owed, but he claims this was done well prior to the entry of the Preliminary Injunction.

At present, the court must conclude that there is no clear and convincing proof that the Defendants have removed or disposed of equipment, records, or other property of SkyWay in violation of this court's Orders. While the circumstances of the Defendants' resignations are highly suspicious, counsel for the Plaintiffs concedes that, absent further evidence, the resignations appear lawful. Thus, at this time, the best the evidence demonstrates is that Brent and Joy Kovar resigned and vacated the premises prior to the entry of the injunction, and James Kent vacated the premises on or about April 29, 2005. Unidentified SkyWay employees may have removed SkyWay property from the offices after the entry of the injunction and on or about April 29, 2005. There is no clear demonstration of who did this or what may have been taken or that this was done with knowledge of the Preliminary Injunction. While the SkyWay's offices were thereafter disassembled, there is no clear proof that the equipment and records that were there at the time of the entry of the injunction are still not there.[4] More significantly, the evidence does not demonstrate that the Defendants aided or abetted in the removal or destruction of SkyWay property after the entry of the injunction. While Brent Kovar had property removed after his resignation, he testifies

---

[4] It does appear that certain vendors of SkyWay may have removed some of their equipment, but again it is not demonstrated that this was caused or permitted by the Defendants in violation of the injunction.

that it was his personal property.  There is no proof, at present, that James Kent or Joy Kovar removed any property other than personal property after the issuance of the injunction, either. In sum, there is no clear and convincing evidence that the Defendants willfully violated this court's Preliminary Injunction or other orders by removing SkyWay property, disposing of its assets, destroying evidence, or directing others to commit such acts.  Accordingly, Plaintiffs' second motion for contempt (Doc. 75) is denied.[5]

By their fourth motion for contempt (Doc. 87), Plaintiffs seek sanctions against the Defendants for their failure to "immediately INFORM THE COURT AS TO THEIR CURRENT ADDRESS AND TELEPHONE NUMBER" as ordered by the court in its June 8, 2005, Order on Motion to Withdraw (Doc. 74) (emphasis in the original).  Upon review of the file, Brent Kovar and James Kent failed to provide this information as directed, and it is not disputed that they did not comply.[6]  Their failures to timely abide by the court's Order have

---

[5]The possible loss of SkyWay property to employees who were "evicted" on or about April 29, 2005, in contravention of the Preliminary Injunction is quite troubling to the court. This property must be accounted for and returned to the estate.  Accordingly, apart from any orders the bankruptcy court may enter in this regard, <u>the court *sua sponte* orders each of the Defendants to investigate the reported taking of SkyWay property after the date of the Preliminary Injunction and seek the recovery of same.  Within thirty days of the date of this Order, the Defendants shall file a report of their efforts in this regard with the court</u>.

[6]Brent Kovar testified he was unaware of the Order.  However, his testimony that former counsel did not advise him of this obligation or otherwise provide him with the court's Order is unconvincing and, in any event, unavailing.  By the court's Order, these Defendants were deemed to be proceeding *pro se*, and thus, they were responsible for complying with the court's Orders.  James Kent offered no testimony at the hearing or otherwise on his failure to respond.  The court concludes from James Kent's silence that he was aware of the Order and fully capable of complying with it.

Although the motion seeks a contempt finding against Joy Kovar as well, the Order on Motion to Withdraw did not direct any action by Joy Kovar.

8

delayed discovery and impeded the Plaintiffs' ability to prosecute this action and the court's management of this case. The Order was lawfully entered and clear and unambiguous, and neither Brent Kovar nor James Kent has demonstrated an inability to comply. Stated otherwise, I find the noncompliance of Brent Kovar and James Kent to be willful and intentional.

Accordingly, the fourth motion for contempt (Doc. 87) is granted. <u>In accordance with the provisions of 28 U.S.C. § 636(e)(6)(B), these facts are certified, and Defendants Brent Kovar and James Kent are ordered to appear before the Honorable Elizabeth A. Kovachevich on August 15, 2005, 2:00 p.m., Courtroom 17, Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida, to show cause why they should not be held in contempt by reason of these facts and punished in accordance with the law</u>.

By their fifth motion for contempt (Doc. 88), Plaintiffs seek an order of contempt against the Defendants for their alleged violation of the Preliminary Injunction by SkyWay's payment to David Steen, Esquire, for his services representing SkyWay in its Chapter 11 bankruptcy action without the consent of this court.[7] Specifically, Plaintiffs argue that Defendants paid $5,000.00 and agreed to transfer title to a 2004 Hummer owned by SkyWay as a retainer for counsel's services. As proof, Plaintiffs proffer the retainer agreement filed for approval with the bankruptcy court. By this agreement, Mr. Stein represented that he received $5,000.00 from a non-debtor source and an agreement from SkyWay to transfer the

---

[7]As revealed at the hearing, mysteriously, the Defendants claim that they re-surfaced as directors on June 8, 2005, by enacting a written consent and since have again assumed to act on behalf of SkyWay.

9

title to a Hummer owned by SkyWay.  At the show cause hearing, Brent Kovar and Joy Kovar testified that the initial retainer was paid by Joy Kovar from her personal funds,[8] rather than from SkyWay's accounts.  As indicated in the retainer agreement, title to the Hummer was given to Stein, but the vehicle was not transferred pending approval of the court.

Upon consideration, the evidence, at present, indicates that the monies used to retain Mr. Stein were not the funds of SkyWay.  As for the agreement to transfer title to the Hummer, such a pledge is prohibited by the Preliminary Injunction; however, the transfer was attempted apparently on the advice of counsel and was made clearly subject to the approval of the bankruptcy court.  No transfer of the property actually occurred.[9]  In these circumstances, there is insufficient evidence of a willful violation of the Preliminary Injunction, and the fifth motion for contempt (Doc. 88) is denied.

At the hearing, the court also addressed the matter of the depositions of Joy Kovar and Glenn Kovar.  With regard to Plaintiffs' motions for contempt against Joy Kovar and Glenn Kovar (Docs. 78, 79) for their failure to appear for depositions scheduled for June 17, 2005, and June 20, 2005, respectively, this court previously deferred ruling on the motions after a hearing and ordered both individuals to appear for deposition on July 15, 2005, and July 20, 2005.  See (Doc. 83).  Joy Kovar and Glenn Kovar subsequently appeared for their depositions (but without any documents).  Plaintiffs now complain that they failed to bring

---

[8]The versions of how the retainer was paid differed.  Joy Kovar claimed she paid $4,000.00, while Brent Kovar testified she paid the full $5,000.00.  In any event, the money is not shown to be that of SkyWay.

[9]Counsel advise that the transfer was denied by the Bankruptcy Court.  Mr. Stein has moved to withdraw.

10

with them any of the documents identified in the notices and have filed a Sixth, Eighth, and Ninth Motions for contempt as against these individuals. These motions will be addressed by separate order. Insofar as the court deferred ruling on the matter of contempt or sanctions on the original motions (Docs. 78, 79), the court now concludes that no such order is appropriate as against Glenn Kovar. The evidence suggests that he did communicate by letter with Plaintiff's counsel prior to the scheduled deposition in a good faith effort to reschedule it. As for Joy Kovar, she claims she was recuperating from hip and knee replacements at the time and could not attend on the scheduled date; however, the record establishes she made no effort to communicate this to counsel prior to the scheduled deposition. In the circumstances of this case, her deliberate nonappearance merits sanctions under Rule 37.[10] <u>Accordingly, Plaintiffs are awarded their reasonable attorney's fees and costs as against Joy Kovar for her willful non- appearance for deposition on June 17, 2005, and reasonable attorney's fees in connection with the instant motion. Counsel shall submit an affidavit of fees and costs within fifteen (15) days</u>.

On June 28, 2005, the court entered a Notice of Hearing (Doc. 81) scheduling a status conference on pending motions for July 7, 2005, in an effort to move the discovery in

---

[10] Joy Kovar was first noticed of the deposition through her counsel. He withdrew, however, and she was personally noticed on June 14, 2005. She made no effort to contact Plaintiffs' counsel to request a reset of the deposition. While the court is not unsympathetic with Ms. Kovar's condition, the history of this case reveals that all the Defendants have sought to avoid participating in the proceedings. As a result, Plaintiffs have expended substantial sums of money in an effort to discover what became of their significant investments in SkyWay with very little to show for it. In this instance, a simple phone call by Ms. Kovar may have avoided the unnecessary additional expense incurred by Plaintiffs in appearing for the deposition and in filing this motion.

this case forward.  The Defendants and Glenn Kovar were duly noticed, and the court conducted the hearing as scheduled.  <u>See</u> (Doc. 81).  Only Plaintiff's counsel and representative and Joy Kovar and Glenn Kovar appeared for the hearing, with the Kovars each appearing by telephone.  Following the hearing, the court entered an Order to Show Cause (Doc. 85), directing Brent Kovar and James Kent to show cause why they should not be held in contempt and sanctions imposed for their failure to appear for the hearing.  Neither Brent Kovar nor James Kent responded to the Order in writing.  At the July 27, 2005, hearing, Brent Kovar testified that he failed to appear because he never received notice of the hearing and did not know about the hearing.  When asked of his address at the time of the mailing of the notice, Mr. Kovar testified that his "official" address was 121 6th Street East, Tierra Verde, Florida, but that he was living in Clearwater with his mother at the time.  As the service list on the notice indicates, Brent Kovar was noticed at each of these addresses.  Moreover, his mother received the notice at her apartment, where Mr. Kovar testified he was living, and she contacted the court concerning the notice and appeared for the hearing.  Joy Kovar testified that she spoke with Brent Kovar and told him she was appearing at the hearing by telephone.  Thus, Brent Kovar's testimony that he was unaware of the hearing is not believable, as is his claim that he did not receive notice.  James Kent offers no cause for his failure to appear at the hearing.

In these circumstances, it appears that both Brent Kovar and James Kent willfully failed to appear at the July 7, 2005, hearing.  At the time, they were deemed to be proceeding *pro se* and thus were duty bound to respond.  <u>See</u> (Doc. 74).  This court's notice of hearing order was lawfully entered and clear on its face.  Neither gentleman has demonstrated an

inability to comply with the Order.  Stated otherwise, their failures to appear were willful and intended to defeat the orderly processes of this court.  <u>Accordingly, pursuant to the provisions of 28 U.S.C. § 636(e)(6)(B), these facts are certified, and Defendants Brent Kovar and James Kent are ordered to appear before the Honorable Elizabeth A. Kovachevich on August 15, 2005, 2:00 p.m., Courtroom 17, Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida, to show cause why they should not be held in contempt by reason of these facts and punished in accordance with the law</u>.

By Defendants' reply to the motions for contempt and orders to show cause, the Individual Defendants move for entry of a protective order as alternative relief.  To the extent not addressed herein, the motion for a protective order (Doc. 96) is denied.

<u>Finally, as discussed at the hearing, in order to move this litigation forward, the parties are directed to conduct a second case management meeting within fifteen (15) days of the date of this Order and to file an Amended Case Management Report within eleven (11) days thereafter</u>.

**Done and Ordered** in Tampa, Florida, this 4th day of August 2005.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Elizabeth A. Kovachevich, United States District Judge
Counsel of Record